# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Darlene F. Stevens, etc., et al.

v.

Kathryn A. Fallen, etc., et al.

### July 9, 1986

### Case No. (Chancery) CH-7057

By JUDGE AUSTIN E. OWEN

On June 19, 1986, the parties, by counsel, filed a written stipulation with the court, reciting therein that "Counsel for both plaintiffs and the defendant have been unable to locate any law on point in this case. Therefore, by agreement, this matter is being submitted for decision based on the foregoing stipulation without argument or brief." The parties, by counsel, orally stipulated the understanding that each party is deemed to have filed a Motion for Summary Judgment based upon said stipulation.

The court finds the facts to be as set forth in the written stipulation, and notes that the parties have resolved all issues involved in this litigation except the issue of "the rights (if any) of the plaintiffs in and to a portion of the jointly held real estate."

Kathryn A. Fallen, defendant, is the widow of William Edward Fallen who died on June 24, 1984, intestate. Plaintiffs are the children of William Edward Fallen born of his previous marriage.

While married, William Edward Fallen and Kathryn A. Fallen acquired title to real property (a residence) in the city of Virginia Beach as tenants by the entireties. (Inasmuch as the stipulation sets forth the contention of Kathryn A. Fallen that she "takes the entire property by operation of law," and the contention of plaintiffs

that "the Stipulation Agreement effectuated an equitable conversion of the property to a tenants in common position," the court construes the stipulation to include the fact that "it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others." See Section 55-21, Code of Virginia of 1950, as amended.) The Fallens separated (for a second time) in 1984 and on February 17, 1984, entered into a "Stipulation and Agreement" (the Agreement) and thereafter sold jointly owned real property in Halifax County and divided the proceeds in accordance with paragraph 3 of the Agreement.

William Edward Fallen committed suicide on June 24, 1984, and his estate is being administered as intestate.

The Agreement in its preface expresses the desire to "determine the property rights in their respective properties," and "to make settlement of all rights. . . which either. . . has. . . against. . . the property of the other. . . the right to inherit and all other matters." One notes the absence of any mention of jointly owned properties and of any mention of rights of survivorship.

Likewise, in the "consideration" clause of the Agreement there is mentioned "full, complete and final settlement. . . of interest whatever of each, in the property, estate or interest of the other," but there is no mention of jointly owned property or rights of survivorship.

The parties were, however, fully cognizant of their jointly owned properties in Virginia Beach and in Halifax County and contracted with respect to the same in Paragraph 3 of their Agreement. With respect to the Virginia Beach residence, William Edward Fallen was given the right of lifetime occupancy and Kathryn was barred from any action to partition or otherwise sell the same; and in the event of sale "at any time" the parties would divide the net proceeds equally. Kathryn agreed at William's wish to execute any documents to effect sale, and William agreed to be responsible for all expenses, taxes, etc.

In paragraph 7 of the Agreement each party released all interest in the property of the other and to any estate which the other "may leave upon his death"; and agreed that each would hold his present or after acquired property "free from any claims or right of curtesy or

dower. . . as though no marriage had ever taken place between them."

In Paragraph *8* of the Agreement the parties acknowledged full knowledge of the property and estate of the other, and agreed that "this agreement contains the entire undertaking and understanding of the parties."

In *Sundin v. Klein*, 221 Va. 232, 239 (1980), the Supreme Court of Virginia recognized that a tenancy by the entirety can be created in Virginia *with all its common law incidents*. At common law, tenants by the entireties "took the entire estate as one person, and upon the death of either spouse, the whole of the estate remained in the survivor. Under this concept. . . the survivor took the whole estate, not because he acquired any new interest upon the death of the other tenant, but because he took the entirety according to the terms of the original conveyance." *Sundin*, at 238. Moreover, "[i]mplicit in the terms under which an entirety estate originates. . . is the proposition that the estate can be terminated only by the voluntary action of both tenants or the death of one." *Sundin*, at 239. (By Virginia Code Section 20-111, the estate can now, also, be terminated by final decree of divorce.)

It follows from the foregoing that Kathryn acquired no interest in the Virginia Beach residence by virtue of any interest in the estate of William, which interest she had waived, but took the whole estate (unless she and William had theretofore voluntarily terminated the estate), "according to the terms of the original conveyance."

Additionally, under the common law fiction, William and Kathryn held the residence "as one person" and, thus, the Agreement references to *his* property and to *her* property would not, at law, include the residence. More importantly here, despite the fact that the Agreement made specific reference to the property held as tenants by the entirety, nothing in that reference can reasonably be construed to manifest an intent to terminate that tenancy *except* in the event that William should, thereafter, desire to sell such property. William expressed no such desire during his lifetime.

Plaintiffs, by the nature of their contentions as set forth in the Stipulation of Facts, would seem to concede that, by the Agreement, the parties did not voluntarily terminate the tenancy by the entireties. Rather,

plaintiffs contend that, as the heirs of William (Kathryn having contracted away any right to inherit), they succeeded to William's rights to demand sale and to receive one-half the net proceeds of sale. This contention overlooks the fact that William had no rights in the residence to pass either to heirs or to devisees, for Kathryn "took the entirety according to the terms of the original conveyance."

Alternatively, plaintiffs contend "that Paragraph 3 of the Stipulation Agreement effectuated an equitable conversion of the property to a tenants in common position."

In *Bauserman v. DiGiulian*, 224 Va. 414 (1982), the Supreme Court of Virginia adopted the majority American view relating to the doctrine of equitable conversion, after noting that the doctrine was unknown at common law and is a creature of courts of chancery. The court quotes at length from *Rockland-Rockport Lime Co. v. Leary*, 203 N.Y. 469, 97 N.E. 43. In that New York case, a lessee with an option to purchase attempted to exercise the option after the lessor's death; and in a suit for specific performance claimed that his election worked an equitable conversion retroactive to the date of the lease. That situation bears much similarity to plaintiffs' attempt here, after the death of William, to exercise William's right to require sale of the residence.

In holding against the Lessee, the New York Court reasoned that:

> The doctrine of equitable conversion rests on the presumed intention of the owner of the property and on the maxim that equity regards as done what ought to be done. As (the lessor) intended no conversion unless the contingent event happened, he is presumed to have intended none until that event happened. . . The maxim underlying the doctrine of equitable conversion rests on a duty to do something, but in this case until the option was exercised there was no duty and it could not be known whether there ever would be a duty." *Bauserman* at 419.

Applying the foregoing to the facts of the present case, it has been noted hereinabove that one cannot presume from the Agreement a present intention to change the

tenancy. The Agreement would have effected a change only if William had expressed a desire to sell; and, thus, neither party intended a conversion unless and until William expressed such a desire. The duty of Kathryn to do something respecting the tenancy (execute documents and participate in an equal division of proceeds) rested on William's subsequent decision, and *it could not be known whether there ever would be a duty.*

For the reasons above set forth, the court finds that upon the death of William, Kathryn owned the entirety of the Virginia Beach real estate. Upon that issue, the court grants summary judgment in favor of the defendant, Kathryn A. Fallen, individually.